CLERK'S COPY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

99 FEB -2 PM 1:49

CLERK-SANTA FE

NANXIANG GE and RIO GRANDE
MEDICAL TECHNOLOGIES, INC.,
a New Mexico corporation,

    Plaintiffs,

vs.                                                      No. Civ. 97-1077 SC/LCS

DOUGLAS BROWN, Officer in Charge,
Albuquerque Suboffice, Immigration &
Naturalization Service; LUIS GARCIA,
District Director, El Paso District of the
Immigration & Naturalization Service;
DORIS MEISSNER, Commissioner,
Immigration & Naturalization Service;
and JANET RENO, Attorney General of
the United States,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiffs' Motion for Award of Attorneys' Fees and Costs, filed April 13, 1998 [Doc. No. 7]. Plaintiffs' motion is filed pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Having considered the pleadings, the relevant law, and being otherwise fully informed, I find that Plaintiffs' motion is generally well taken and should be granted as modified.

## I. BACKGROUND

Plaintiff Ge is a Chinese national who resided in the United States under an

H-1B visa, which allowed him to work for Plaintiff Rio Grande Medical Technologies, Inc. On June 19, 1996, Plaintiff Ge sought permanent residence status under 8 U.S.C. § 1255, and filed an Adjustment of Status Application with the Albuquerque suboffice of the Immigration and Naturalization Service (INS). Plaintiff Ge's adjustment application was employment based, and the grant or denial of such an application seriously impacted not only Plaintiff Ge and his family, but also Plaintiff Ge's employer, Plaintiff Rio Grande Medical Technologies, Inc. Plaintiff Ge waited for action on his application for over a year. Plaintiffs' counsel repeatedly contacted Defendants Brown and Garcia and their subordinates to request that action be taken on Plaintiff Ge's application or, at the very least, that the INS give a time estimate for when action would be taken. Both requests were refused.

On August 13, 1997, Plaintiffs filed the Complaint in this case, requesting the Court to direct the Defendants to act on Plaintiff Ge's application. Less than a month later, on September 10, 1997, the INS's Albuquerque Suboffice issued a notice stating that the Plaintiff Ge's application was approved and Plaintiff Ge was granted permanent resident alien status. On March 4, 1998, the parties filed a Stipulation of Dismissal, and the case was dismissed on March 13, 1998. Plaintiffs' filed their Motion for Award of Attorneys' Fees and Costs on April 13, 1998. Defendants filed a Response to Plaintiffs' Motion for Award of Attorney's Fees and Costs on December 11, 1998

[Doc. No. 9], and Plaintiffs' filed a Reply in Support of Motion for Award of Attorneys' Fees and Expenses on December 16, 1998 [Doc. No. 10].

## II. DISCUSSION

### A. Preliminary Matters

As a preliminary matter, I note that Defendants' response is extremely untimely. See D.N.M.L.R.-Civ. 7.6(a).[1] Defendants' failure to reply in a timely fashion is not only not in accordance with the Local Rules but also could be construed as consent to grant Plaintiffs' motion. See D.N.M.L.R.-Civ. 7.5(b). I will consider Defendants' response, however, because it reveals aspects of Plaintiffs' motion which are deeply troubling.

In their motion, Plaintiffs' state that "[t]he undersigned has conferred with counsel for Defendants, and is authorized to state that Defendants oppose the granting of this motion. A memorandum setting forth the grounds of this motion in greater detail is therefore submitted . . . ." Pls. Motion at 3, ¶ 11 (emphasis added). In their response, Defendants state that Plaintiffs' counsel Hughes did not determine whether the motion was contested or not before filing it and, thus, failed to follow D.N.M.L.R.-Civ. 7.3(b)(2). In their reply, Plaintiffs' state that "concurrence of counsel was not sought in the motion." Pls. Reply at 2 (emphasis added). Plaintiffs

---

[1] Until Plaintiffs' letter of November 16, 1998, the Court was unaware that the parties were attempting to settle the fee issue.

further state in their Reply that they did not seek concurrence of counsel because it has been their experience that motions for attorneys' fees and expenses under the EAJA are routinely opposed by the United States, "at least as to the amount, if not as to the entitlement to fees." Id. It is unclear what is the cause of the discrepancy between Plaintiffs' original stance on the issue of concurrence determination and their later stance in their Reply (and Defendants' statement in their Response). Such a contradiction in Plaintiffs' contentions is disquieting. Plaintiffs should not need to be reminded of their obligations under Federal Rule of Civil Procedure 11. Furthermore, Plaintiffs' apparent failure to determine whether their motion was opposed, and if so to what extent, violates D.N.M.L.R.-Civ. 7.3(b)(2).

Also troubling is Plaintiffs' failure to understand one of the purposes of determining before filing a motion whether it will be opposed, in part or in whole. By consulting with Defendants, Plaintiffs could have determined which of the many issues in their EAJA fees and costs motion were uncontested, saving time and expense for all involved.

B. EAJA Award Prerequisites

The EAJA provides that a court must award attorney's fees and other expenses to a prevailing party (other than the United States) incurred by that party in any civil action (except a tort action), "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

28 U.S.C. § 2412(d)(1)(A). A prevailing party also may recover her costs. See 28 U.S.C. §§ 1920, 2412(a)(1). To award fees and costs under the EAJA, a court first must find that: (1) the requesting party was the prevailing party; (2) the Government's position was not substantially justified; (3) there are no special circumstances that would make an award unjust; and (4) the fee application was submitted to the court within 30 days of final judgment in the case and was supported by an itemized statement. See 28 U.S.C. §§ 2412(d)(1)(A), (d)(1)(B); see also Commissioner, INS v. Jean, 496 U.S. 154, 158 (1990). It is uncontested by Defendants that all four conditions are satisfied here. Therefore, because it is agreed that all the statutory criteria of the EAJA have been satisfied, I find that Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to the EAJA.

## C. Amount of Attorneys' Fees and Costs to Be Awarded

"[N]o award of fees is 'automatic.'" Jean, 496 U.S. at 163. A district court has substantial "discretion to determine the amount of a fee award" under the EAJA. Id. at 161; see id. at 163, 165-66. To be awarded, fees must be reasonable and compensable both in the hourly rate and number of hours charged. Costs must be actually incurred and compensable.

### 1. Rate Charged

Plaintiffs have three attorneys: Richard W. Hughes, John L. Sullivan, and John Lawit. Mr. Hughes and Mr. Sullivan are members of the Rothstein firm--Mr. Hughes

as a partner and Mr. Sullivan as an associate.[2] Both Mr. Hughes and Mr. Sullivan, for purposes of this fee application, have charged an hourly rate of $125.00 per hour, an amount within the statutory limit. See 28 U.S.C. § 2412(d)(2)(A) (as amended) (compensation cap of $125.00 per hour). Defendants do not contest the hourly rate charged by Mr. Hughes and Mr. Sullivan. Furthermore, the experience and expertise of Mr. Hughes and Mr. Sullivan is evidenced, for the most part, by the Affidavit of Mr. Hughes and the pleadings. Therefore, I find that the charged hourly rates of Mr. Hughes and Mr. Sullivan are reasonable.

Mr. Lawit has charged his standard hourly rate of $225.00, an amount which exceeds the EAJA fee cap. Mr. Lawit justifies his fee by stating he has special expertise in the area of immigration law. A court cannot award attorney's fees in excess of $125.00 per hour unless it "determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A) (as amended). On the issue of what constitutes a "special factor" for purposes of the EAJA, the United States Supreme Court has explained:

> [T]he [special factor] exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some *specialized* sense, rather than just in their general legal

---

[2] I will refer sometimes in this Opinion to Mr. Richard W. Hughes and Mr. John L. Sullivan as simply the Rothstein firm.

6

> competence. We think it refers to attorneys having some
> *distinctive knowledge* or *specialized skill needful for the
> litigation in question* . . . . Examples . . . would be an
> identifiable practice specialty such as patent law, or
> knowledge of foreign law language. When such
> qualifications are *necessary* and can be obtained *only* at rates
> in excess of the [EAJA] cap, reimbursement above that limit
> is allowed.

Pierce v. Underwood, 487 U.S. 552, 572 (1988) (emphases added).

Defendants do not contest the hourly rate charged by Mr. Lawit, Mr. Lawit's immigration law expertise, or that there was a limited availability of qualified immigration attorneys for the proceedings involved. I note that Mr. Lawit's special immigration knowledge and experience were used sparingly and appear to have been necessary to the prosecution and successful outcome of this lawsuit. Therefore, I will allow Mr. Lawit his fee of $225.00 per hour.

### 2. Hours Charged

I now turn to an examination of the reasonableness of the number of hours spent on this case. Mr. Lawit charged for 4.40 hours. I have carefully reviewed Mr. Lawit's time sheet and his Affidavit, and find that those hours are reasonable and compensable.

The Rothstein firm billed for 51.90 hours--15.50 hours for Mr. Hughes and 36.40 hours for Mr. Sullivan. Of those 51.90 hours, approximately 25.00 hours were spent by the Rothstein firm in researching, drafting, and finalizing the motion and

memorandum for the fee award, with the supporting materials. I find that the time spent and charged for the Rothstein firm's work on the fee motion and memorandum could have been reduced substantially if only Plaintiffs had conferred with Defendants on what fee award issues were and were not contested. I, therefore, find that the hours charged by the Rothstein firm for its work on the fee motion and memorandum are unreasonable, and will reduce those hours to 12.50.

As for the remainder of the 26.90 hours charged by the Rothstein firm for other work on this case, I have carefully reviewed the time sheets of Mr. Hughes and Mr. Sullivan and Mr. Hughes' Affidavit, and find, with two exceptions discussed below, that those hours are reasonably charged and compensable. Furthermore, although both Mr. Hughes and Mr. Sullivan worked on the Complaint (with teleconferences with Mr. Lawit), I find that those efforts were not duplicative, but were essential to proper preparation, prosecution, and representation. See Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1206 (10th Cir. 1986); Ramos v. Lamm, 713 F.2d 546, 554 (10th Cir. 1983).

An attorney should not bill for time spent performing work that could have been performed at a lesser fee by a nonattorney. See Griffin & Dickson v. United States, 21 Cl. Ct. 1, 11 & n.17 (Cl. Ct. 1990); see also Pettyjohn v. Chater, 888 F. Supp. 1065, 1069 (D. Colo. 1995). Mr. Sullivan billed for: (1) (August 12, 1997) "[f]inalizing Complaint and arranging for filing and service"; and (2) (August 13, 1997)

8

"[f]iling and serving complaint; meeting with R. Hughes re same." Arranging for the filing and service of the Complaint and filing and serving the Complaint are tasks that a nonattorney should have performed. Consequently, I will reduce the Rothstein firm's claimed hours by an additional 1.70 hours. The Rothstein firm will be awarded for a total of 37.70 hours.

### 3. Gross Receipts Tax

Plaintiffs' fee calculations include a state gross receipts tax on the fees. Gross receipts taxes for fees are customarily charged to the client. It is open to interpretation, however, whether a gross receipts tax for fees is awardable under the EAJA. See 28 U.S.C. §§ 2412(d)(1)(A); (d)(2)(A) (as amended). But see Stewart v. Sullivan, 810 F. Supp. 1102, 1108 (D. Haw. 1993) (state excise tax on fees nonrecoverable under EAJA); cf. McWilliams v. Commissioner, IRS, 69 T.C.M. (CCH) 2107, 1995 WL 116295 at **8 (1995) (gross receipts tax on fees should be included in overhead and is not recoverable). Tenth Circuit law on the general awardability of a gross receipts tax also is ambiguous. Compare Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1208, 1210 (10th Cir. 1986) (district court's award of gross receipt tax allowed) with Velasquez v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor, 844 F.2d 738, 739 (10th Cir. 1988) (ALJ's nonaward of gross receipts tax upheld); and Herrera v. First N. Sav. and Loan Ass'n, 805 F.2d 896, 901-02

(10th Cir. 1986) (district court's nonaward of gross receipts tax upheld). I find that a gross receipts tax is within my discretion to award and is compensable under the EAJA.

I will award Plaintiffs' requested amount for the gross receipts tax on the fees of Mr. Lawit ($57.67). Plaintiffs also have requested a total of $405.47 in gross receipts tax on the fees of the Rothstein firm. This amount must be reduced because of the reduction in the Rothstein firm's hours. I, therefore, will award $294.53 in gross receipts tax on the fees of the Rothstein firm.

### 4. Costs

Plaintiffs have requested $266.64 in costs, which were incurred by the Rothstein firm. These costs are not contested by Defendants. I have reviewed the Rothstein firm's Statement of Expenses and Costs, and Mr. Hughes' Affidavit, and find that the following requested costs are compensable under the EAJA and 28 U.S.C. § 1920, and should be awarded: (1) United States District Court filing fee ($150.00); (2) document reproduction ($98.25); and (3) gross receipts tax on document reproduction ($6.14). I cannot award Plaintiffs their requested reimbursement for $12.25 for certified mailing costs because under Tenth Circuit law costs for postage fees are not authorized under

the EAJA. See Weakley v. Bowen, 803 F.2d 575, 580 (10th Cir. 1986).[3] Plaintiffs, consequently, will be awarded $254.39 for costs.

**NOW, THEREFORE, IT IS ORDERED** that Plaintiffs' Motion for Award of Attorneys' Fees and Costs, filed April 13, 1998 [Doc. No. 7], is GRANTED AS MODIFIED.

**IT IS FURTHER ORDERED** that Defendants shall pay, within thirty (30) days of the date of this Order, attorneys' fees and costs in the following amounts (for a total of $6309.09):

> $5702.50 in attorneys' fees, representing 4.40 hours taxed at a rate of $225.00 per hour ($990.00) for Mr. Lawit, and 37.70 hours of attorney time taxed at a rate of $125.00 per hour ($4712.50) for Mr. Hughes and Mr. Sullivan of the Rothstein firm;
>
> $352.20 in gross receipts tax on fees, representing $57.67 for fees of Mr. Lawit and $294.53 for fees of Mr. Hughes and Mr. Sullivan of the Rothstein firm; and
>
> $254.39 in costs of the Rothstein firm.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] The Tenth Circuit's decision about the nonawardability of some costs under the EAJA has been criticized. See Jean v. Nelson, 863 F.2d 759, 777-78 (11th Cir. 1988), aff'd, Commissioner, INS v. Jean, 496 U.S. 154 (1990); Kelly v. Brown, 862 F.2d 1333, 1335 (8th Cir. 1988); Robinson v. Sullivan, 719 F. Supp. 1012, 1014 (D. Kan. 1989).

Counsel for Plaintiffs: John W. Lawit, P.C., Albuquerque, New Mexico; Richard W. Hughes and John L. Sullivan, ROTHSTEIN, DONATELLI, HUGHES, DAHLSTROM, CRON & SCHOENBURG, LLP, Santa Fe, New Mexico

Counsel for Defendants: John J. Kelly, UNITED STATES ATTORNEY, and Joan Marie Hart, ASSISTANT U.S. ATTORNEY, Albuquerque, New Mexico